IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUAN RAMON GARCIA ZAVALA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> IMMIGRATION CUSTOM ) <br> ENFORCEMENT, and the U.S. ) <br> DEPARTMENT OF HOMELAND ) <br> SECURITY, ) <br> ) <br> Defendants. ) | Civil No. 3:24-cv-00303-SLH <br> Judge Stephanie L. Haines |

**OPINION**

Presently pending before the Court is Plaintiff's Motion for Attorney's Fees ("the Motion"). (ECF No. 14). For the reasons that follow, and after careful consideration of the record and applicable case law, the motion will be denied.

I.   **Procedural and Factual Background**

Plaintiff Juan Ramon Garcia Zavala commenced this action on December 20, 2024, with the filing his Complaint, (ECF No. 1), against Defendants Immigration Custom Enforcement, and the U.S. Department of Homeland Security.  In his Complaint, Plaintiff alleges that on July 31, 2024, he submitted a Freedom of Information Act ("FOIA") request to the Defendants, and when Defendants failed to timely respond, Plaintiff filed this three-count lawsuit.  (ECF No. 1 ¶¶ 13, 31).

The Complaint was ultimately dismissed without prejudice upon the Court's granting of Plaintiff's Motion for Voluntary Dismissal Without Prejudice. (ECF Nos. 10, 11). The Court

1

retained limited jurisdiction over the award of attorneys' fees and costs,[1] and the parties then attempted to negotiate the issue. (ECF No. 11). Those negotiations were not fruitful, and Plaintiff thereafter filed his now-pending Motion, with Brief in Support. (ECF Nos. 14, 15). Plaintiff seeks fees and costs in the amount of $10,460.71, plus $3,978 for the time spent litigating the fee request. (ECF No. 15 at 9-10). Defendants filed a Response in opposition to the fee petition. (ECF No. 16). The matter is now ripe for adjudication.

The parties have submitted undisputed record evidence in support of their arguments. Plaintiff has attached a Declaration of Daniel Melo ("Melo Decl."), Plaintiff's pro bono counsel. (ECF No. 14-2). Defendants have attached three documents in support of their position: (1) Declaration of Fernando Pineiro, FOIA Director of the U.S. Immigration and Customs Enforcement FOIA Office ("Pineiro Decl.") (ECF No. 16-1); (2) an email dated January 23, 2025, wherein Plaintiff stated his specific request to search enumerated databases for records (ECF No. 16-2); and (3) ICE's response to the FOIA Request dated February 4, 2025. (ECF No. 16-3).

In his Complaint, Plaintiff alleged that he has been detained in ICE custody at Moshannon Valley Processing Center in Pennsylvania since April 2024 and at that time was seeking protection from removal before an Immigration Judge based on his fear of persecution or torture upon returning to his native country of El Salvador. (ECF No. 1 ¶ 7). Upon his arrest, Plaintiff had a Reasonable Fear Interview ("RFI"), where he explained his fear of returning to El Salvador, and DHS officials informed him that they had records indicating he was a suspected MS-13 gang member. (ECF No. 1 ¶¶ 8-9). Plaintiff initially sent a letter to DHS asking for more information

---

[1] When a case is administratively closed, though not dismissed, a district court retains jurisdiction and therefore has the authority to issue a fee order in response to a fee application. *See I.K. on behalf of Z.S. v. Montclair Bd. of Ed.*, 820 Fed. App'x. 152, 153 (3d Cir. 2020) (holding that the court retained jurisdiction over the plaintiff's claims and could issue a fee order despite the case being administratively closed).

on June 3, 2024 (ECF No. 1 ¶10), and his pro bono counsel followed up on July 31, 2024. (ECF No. 1 at ¶11).

The FOIA request sought information pertaining to Plaintiff's deportation records, including Form I-213; and any documents, records, or database entries in possession of ICE related to Plaintiff's identification as a gang member. Pineiro Decl. ¶ 6. The FOIA request was acknowledged by ICE on August 9, 2024, and assigned tracking number 2024-ICFO-49447. *Id*. at ¶ 9. Plaintiff was informed at that time there would be a delay in responding to the request due to the large number of FOIA requests received by ICE. *Id*. Additionally, Plaintiff was informed that portions of the information sought were referred to the U.S. Citizenship and Immigration Services ("USCIS"), a DHS component. *Id*. On August 9, 2024, the same day ICE acknowledged Plaintiff's FOIA request, the ICE FOIA Office tasked Enforcement and Removal Operations ("ERO") with conducting a search. *Id*. ¶10. Plaintiff's request was at that time placed in the queue for processing by ERO. *Id*. However, as mentioned in the acknowledgment letter, due to the large number of FOIA requests received by ICE, there was an unavoidable delay in ERO conducting the search. *Id*. On August 9, 2024, the ICE FOIA Office sent a referral notice to the USCIS FOIA Office for a search of potentially responsive records under USCIS's purview. *Id*. ¶ 11.

On September 18, 2024, USCIS issued its response with portions of Plaintiff's A-file including his Form I-213, with redactions as to Plaintiff's criminal history. (ECF No. 1-8 ¶ 10). On September 30, 2024, Deputy Chief Counsel of the Office of Principal Legal Advisor, Brian McDonnell, advised Plaintiff's counsel in his immigration case that Plaintiff would receive a copy of DHS's evidence packet when it was filed in the immigration case. (ECF No. 1-7).

DHS and ICE were actively processing Plaintiff's request prior to the lawsuit and released the records these agencies always intended to release. Pineiro Decl. ¶¶ 20, 23. For example, on

November 12, 2024, prior to the filing of the Complaint, ERO had already discovered 11 pages of responsive records from its initial search and provided those records to the ICE FOIA Office's for review. *Id*. ¶ 20.

At one point, Plaintiff's attorney attempted to obtain records about ICE's mistaken belief he was the member of a gang, by issuing a subpoena request with the immigration judge ("IJ"). (ECF No. 1. ¶¶ 9-20). The IJ denied Plaintiff's subpoena and continued his case for four additional months. (ECF No. 1-9) (Order of the Immigration Judge dated Nov. 20, 2024). In that order, the IJ stated, "[t]he respondent has not established that he has made a diligent effort, without success, to produce the information sought. . . . DHS-ICE has expedited the FOIA request, which has been pending for approximately 3 months and 20 days. Because the FOIA request will likely be adjudicated in the reasonably foreseeable future, the Court will deny the motion for subpoena pursuant to regulation." *Id*.; ECF No 1-10 at 2 (re-setting individual hearing to March 17, 2025).

Defendants have submitted evidence that ICE has recently had a substantial increase in the number of FOIA requests. The ICE FOIA Litigation Processing Unit's workload has increased such that as of June 2025, it is handling 186 active FOIA litigations, of which 98 litigations have monthly rolling productions. Pineiro Decl. ¶14. ICE's normal processing rate for cases in litigation is 500 pages or 5 minutes of media files, per month, per case. On average, the ICE FOIA Litigation Unit is currently processing approximately 49,000 pages of potentially responsive records per month. At the time the ICE FOIA Office received Plaintiff's July 31, 2024, FOIA request, the backlog was 29,622 requests. *Id*. ¶ 18. The Department of Justice publishes yearly a statistical summary of FOIA requests. The most recent report issued in 2025 shows that backlogs of FOIA requests existed across numerous agencies, including DHS. DHS saw an increase of 314,734

4

requests in fiscal year 2024 from fiscal year 2023. *See* https://www.justice.gov/oip/media/1398111/dl?inline at p. 5.

On January 23, 2025, a month after this lawsuit was filed, Plaintiff emailed a specific request to search enumerated databases for records, namely the Criminal History Information Sharing (CHIS) database, ICE/ERO Security Alliance for Fugitive Enforcement (SAF), the electronic Post Order Custody Review (ePOCR) system, and "DHS-accessible gang databases". (ECF No. 16-2). On February 4, 2025, ICE responded to Plaintiff's FOIA request, which included Plaintiff's January 23, 2025 search criteria. (ECF No. 16-3). ICE processed and redacted 26 responsive documents. *Id*. ICE provided the responsive documents prior to the response filing deadline in this matter, February 6, 2025, and prior to any hearing on the merits in his immigration case, which was scheduled to occur on March 17, 2025. (ECF No. 1 ¶ 24). Plaintiff has been provided with all records responsive to his FOIA request. Pineiro Decl. ¶ 25.

## II.     Legal Standard

Because parties are typically responsible for their own attorneys' fees, there is a "general practice of not awarding fees to a prevailing party absent explicit statutory authorization." *Truesdell v. Philadelphia Housing Authority*, 290 F.3d 159, 163 (3d Cir. 2002) (quoting *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 819 (1994)). FOIA allows for attorneys' fees where a plaintiff has "substantially prevailed" through judicial order or the agency's unilateral change in position. *See* 5 U.S.C. § 552(a)(4)(E)(i)-(ii). FOIA requires a litigant to demonstrate that the lawsuit was reasonably necessary and that the litigation substantially caused the requested records to be released. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225, 231 (D.D.C. 2012) (quoting *Burka v. HHS*, 142 F.3d 1286, 1288 (D.C.Cir.1998)).

To recover fees and costs, a FOIA plaintiff must be both eligible for and entitled to such an award. *See Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011*); see McMichael v. U.S. Dep't of Just.*, No. CV 18-997-CJB, 2022 WL 4597885, at *3 (D. Del. Sept. 30, 2022) (applying *Brayton* prongs). The eligibility prong determines whether a plaintiff "may" receive fees. *Id.* (citation omitted). A plaintiff is eligible for an award if he (1) obtains relief through a judicial order, or (2) shows that the lawsuit "caused a change in the agency's position regarding the production of requested documents." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 98 (D.C. Cir. 2020); *see* 5 U.S.C. § 552(a)(4)(E)(ii).

If the plaintiff is eligible for a fee award, courts proceed to the entitlement prong, which assesses whether a plaintiff "should" receive fees. *Brayton*, 641 F.3d at 524. To determine entitlement, courts consider "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). No one factor is dispositive, *id.*, and "[t]he sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1094 (D.C. Cir. 1992).

### III. Analysis

First, the Court will address whether Plaintiff is *eligible* for attorney's fees. The Court finds he is not, and therefore, the Court need not address the second prong, whether he is *entitled* to a fee award. Thus, the Court need not decide what amount of fees and costs to award.

Since the Court never ordered relief to Plaintiff (Plaintiff having filed his Notice of Voluntary Dismissal), he must establish his fee eligibility under the "catalyst theory." *See Am. Wild Horse Campaign v. BLM*, No. 22-cv-3061, 2024 WL 3967256, at *2 (D.D.C. Aug. 26, 2024).

6

Plaintiff argues he substantially prevailed in this litigation because the filing of the lawsuit served as a catalyst for the Defendants' processing of his FOIA request. Defendants disagree.

Under the catalyst theory, a plaintiff is eligible for fees if "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation." *Harvey v. Lynch*, 178 F. Supp. 3d 5, 7 (D.D.C. 2016) (alteration in original) (quoting *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981)), *aff'd sub nom. Harvey v. Sessions*, No. 16-5200, 2017 WL 4220323 (D.C. Cir. July 14, 2017). In other words, Plaintiff must show that his lawsuit was "necessary to ensure the agency's compliance with FOIA." *Elec. Priv. Info. Ctr. v. DHS*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016). The mere fact that the information sought was not released until after the suit was instituted without more is insufficient to establish that [plaintiff] substantially prevailed." *Wheeler v. IRS*, 37 F. Supp. 2d 407, 412 (W.D. Pa. 1998).

The Court concludes Plaintiff has not shown causation. The "key question" under the catalyst theory is "whether 'the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation[.]'" *Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 4 (D.D.C. 2011) (alterations in original) (internal citations and quotation marks omitted). Whether a plaintiff has sparked this type of change is "largely a question of causation." *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 46–47 (D.D.C. 2012) (citation and internal quotations omitted). When "disclosure is triggered by events unrelated to the pending lawsuit, the causal nexus is missing, and the requester cannot be deemed a 'prevailing party[.]'" *Citizens for Resp. & Ethics in Washington v. DOJ*, 83 F. Supp. 3d 297, 303 (D.D.C. 2015) (noting that this "prevent[s] plaintiffs from being the beneficiaries of purely extrinsic factors").

Plaintiff submitted his FOIA request in July 2024. By the time he filed this lawsuit in December 2024, he had not received a response. An agency's "unusually long" pre-suit delay in responding to a FOIA request "might give rise to the inference that the agency forgot about, or sought to ignore" the request. *Harvey*, 178 F. Supp. 3d at 8; *see Am. Wild Horse Campaign*, 2024 WL 3967256, at *3. Here, the Defendants' delay in processing the FOIA request was neither unexplained nor unusually long. While this delay exceeded FOIA's prescribed deadline, *see* 5 U.S.C. § 552(a)(6)(A)(i), "some amount of delay in excess of the statutory limit is, regrettably, a common feature of the FOIA process," *Zynovieva v. U.S. Dep't of State*, No. 19-cv-3445 (RDM), 2023 WL 2755599, at *6 (D.D.C. Mar. 31, 2023) (noting that a six-month processing delay did not "give rise to an inference that the [agency] forgot about, or sought to ignore" the FOIA request (citation and internal quotation marks omitted)). And, given the uncontroverted backlog in FOIA requests, Plaintiff has not met his burden that initiating this litigation caused the Defendants to release documents it would not have otherwise. *See Am. Wild Horse Campaign*, 2024 WL 3967256, at *3 (holding that the agency's failure to communicate with the plaintiff was "regrettable" but did not "overcome its assurances that it intended to process [the plaintiff's] request in the order received and experienced delays due to backlog"); *Zynovieva*, 2023 WL 2755599, at *6–7 (recognizing that it is the plaintiff's "burden to show that it is more likely than not that [its] litigation caused the release of documents, not the [agency's] burden to prove otherwise").

Defendants have provided sufficient evidence, not rebutted by Plaintiff, that the FOIA compliance delays "may be due to factors having nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a

combination of these factors." *Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 118–19 (D.D.C. 2014). Any inference that an agency was ignoring a FOIA request "is eroded, if not fully rebutted, when the agency provides an alternative explanation for the delay." *First Look Media Works, Inc. v. U.S. Agency for Glob. Media*, No. 20-cv-3499, 2024 WL 4262773, at *4 (D.D.C. Sept. 23, 2024). Here, Defendants have shown administrative delays due to the backlog of FOIA requests as well as the necessity of inter-agency searches and responses.

Moreover, it is clear from the record that the Defendants had begun processing Plaintiff's request prior to the lawsuit being filed, and thus, the lawsuit was not a catalyst. Pineiro Decl. ¶¶ 20, 23; ECF No. 1-9 (IJ Order); *Gov't Accountability & Oversight v. SEC*, No. 23-cv-3268 (RC), 2024 WL 4828107, at *4 (D.D.C. Nov. 19, 2024) (finding "no reason to think" that the agency would have withheld the requested documents absent a lawsuit, in part because the agency began processing the request before the plaintiff filed the complaint (citation omitted)). Pineiro's Declaration provides a detailed timeline of the steps taking to process Plaintiff's request, and ICE was in the process of producing documents in November 2024 prior to the lawsuit. *See Harvey*, 178 F. Supp. 3d at 7–8 ("declaration and the supporting evidence ma[d]e clear [that] the bulk of the work to process [the] FOIA request had already been completed at the time [the Plaintiff] filed suit" meaning that the lawsuit "at most, prompted the [agency] . . . to wrap up work that had already been taken almost to completion"); *see also Calypso Cargo Ltd.*, 850 F. Supp. 2d at 5 (denying attorneys' fees when the defendant "provided a detailed timeline of events leading up to the release of the requested records" showing that "multiple divisions within the Coast Guard had already begun coordinating and processing the plaintiffs' request before plaintiffs filed their lawsuit"). Accordingly, attorneys' fees are not warranted in this case.

## IV. Conclusion

Plaintiff has failed to demonstrate that he substantially prevailed in this litigation, and therefore, for the reasons stated herein, the Motion for Attorney's Fees and Costs (ECF No. 14) will be denied.

An appropriate Order will follow.

Date: February 9, 2026

Stephanie L. Haines
United States District Judge